NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 25 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OREGON WILD, an Oregon nonprofit corporation; WILDEARTH GUARDIANS, a New Mexico nonprofit corporation, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> UNITED STATES FOREST SERVICE; et al., <br><br> Defendants-Appellees. | No.   23-35579 <br><br> D.C. No. 1:22-cv-01007-MC <br><br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted September 11, 2024
San Francisco, California

Before: WARDLAW and BUMATAY, Circuit Judges, and R. COLLINS,[**] District Judge.

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

Oregon Wild and WildEarth Guardians (collectively "Wild") appeal the district court's grant of summary judgment in favor of the United States Forest Service, Michael Ramsey, Jeannette Wilson, Randy Moore, and Thomas Vilsack (collectively the "Forest Service").  Wild contends that the Forest Service violated the Administrative Procedure Act ("APA") and the National Environmental Policy Act ("NEPA") in approving three commercial logging projects in the Fremont-Winema National Forest under a categorical exclusion ("CE") from NEPA's environmental review, known as categorical exclusion 6 ("CE-6").  Wild also appeals the district court's denial, in part, of Wild's request for judicial notice.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and vacate and remand in part.[1]

1.      As to Wild's first APA claim that CE-6 does not encompass the three projects at issue, the district court correctly determined that the Forest Service's use of CE-6 to approve the projects at issue —the South Warner Project, Bear Wallow Project, and Baby Bear Project—was not arbitrary or capricious so as to violate the APA.  An agency may avoid preparing an environmental impact statement ("EIS") or an environmental assessment ("EA") for a proposed project if the proposed project fits within a specific CE.  *Mountain Communities for Fire*

---

[1] We also vacate the district court's order granting the Forest Service's bill of costs.

*Safety v. Elliot*, 25 F.4th 667, 675 (9th Cir. 2022) (citation omitted).  CE-6 applies to "[t]imber stand and/or wildlife habitat improvement activities that do not include the use of herbicides or do not require more than 1 mile of low standard road construction."  36 C.F.R. § 220.6.[2]  The Forest Service determined that CE-6 applied to the three projects at issue because they addressed the need to improve forest stand conditions and wildlife habitat, and did not include the use of herbicides or require more than one mile of low standard road construction.  Furthermore, the Forest Service determined that there were no extraordinary circumstances attendant to the three projects, which would warrant an EIS or EA.  Wild argues that the Forest Service's approval of the Projects under CE-6 was arbitrary and capricious because CE-6 does not cover "large-scale" commercial logging operations like the projects at issue.

An agency's decision to invoke a CE to avoid an EIS or EA is not arbitrary or capricious under the APA if the agency reasonably determined that a project is encompassed by a CE.  *Mountain Communities for Fire Safety*, 25 F.4th at 680.

---

[2] Examples include:
    (i) Girdling trees to create snags;
    (ii) Thinning or brush control to improve growth or to reduce fire hazard including the opening of an existing road to a dense timber stand;
    (iii) Prescribed burning to control understory hardwoods in stands of southern pine; and
    (iv) Prescribed burning to reduce natural fuel build-up and improve plant vigor.
36 C.F.R. § 220.6.

We interpret regulations according to the same rules as statutes, applying traditional rules of construction. *Minnick v. Comm'r of Internal Revenue*, 796 F.3d 1156, 1159 (9th Cir. 2015). "[T]he starting point of our analysis must begin with the language of the regulation." *Wards Cove Packing Corp. v. Nat'l Marine Fisheries Serv.*, 307 F.3d 1214, 1219 (9th Cir. 2002).

Here, as the district court found, the text of CE-6 plainly covers the three projects at issue. CE-6 does not limit activities based on scale or acreage. *See* 36 C.F.R. § 220.6(e)(6). "Rather, it allows for timber stand improvement so long as such activities 'do not include herbicides or do not require more than 1 mile of low standard road construction' (neither of which applies here)." *Mountain Communities*, 25 F.4th at 676 (citation omitted).

Acknowledging that CE-6 does not contain an explicit size or scale limitation, Wild instead contends that an undefined size or acreage limitation should be read into CE-6. We decline to adopt such a reading. The text of CE-6 and examples it contains do not support a finding of an implied size or acreage limitation. Furthermore, the existence of specific size and acreage limitations in

4

other CEs[3]—including CE-4[4] which was promulgated in the same rulemaking as CE-6—demonstrate that the Forest Service was aware of size limitations and chose not to employ them in CE-6.  *See Tang v. Reno*, 77 F.3d 1194, 1197 (9th Cir. 1996).  Nor does Wild's appeal to the broader purpose of NEPA and the general definition of CEs[5] authorize us to rewrite CE-6 to add an undefined size or acreage limitation.  *See Churchill Cnty v. Norton*, 276 F.3d 1060, 1072 (9th Cir. 2001).

Neither *Environmental Protection Information Center v. Carlson* ("*EPIC*"), 968 F.3d 985 (9th Cir. 2020), nor *West v. Secretary of Department of Transportation*, 206 F.3d 920 (9th Cir. 2000), supports a finding of an implied size limitation in CE-6.  In *EPIC*, we held that a logging project thinning trees up to 200 feet away from Forest Service roads was not within the scope of a CE designed for "road repair and maintenance."  968 F.3d at 990.  We explained that although the felling of "a dangerous dead or dying tree right next to the road comes within the scope of the 'repair and maintenance' CE," the project permitted the felling of many more trees than that.  *Id.*  By contrast, Wild does not contend that

---

[3] *See* 36 C.F.R. §§ 220.6(e)(12) (allowing harvesting of live trees for no more than 70 acres), (e)(13) (allowing the salvage of dead trees for no more than 250 acres), (e)(14) (allowing commercial and non-commercial felling and removal of trees for no more than 250 acres), (e)(25) (limiting ecosystem improvement activities to 2,800 acres); 68 Fed. Reg. 33,814 (2003) (capping mechanical treatment projects at 1,000 acres and prescribed burns at 4,500 acres).
[4] *See* 57 Fed. Reg. 43,180 (1992) (limiting timber logging to 250,000 board feet and salvage logging to 1,000,000 board feet).
[5] *See* 40 C.F.R. § 1501.4.

5

the current projects include activities that do not fall within the substantive scope of CE-6.

Likewise, in *West*, we held that a new highway interchange construction project was not within the scope of a CE example in the Federal Highway Authority's ("FHWA") regulations. 206 F.3d at 928. Reviewing other examples within that CE, we concluded that none of the examples contained in that CE approached the magnitude of the new highway interchange project. *Id.* Crucially, we held that our conclusion was "bolstered" by another provision in the FHWA's regulations that disqualified the use of that CE for projects that would have "significant impacts on travel patterns." *Id.* at 928–29. Here, Wild does not point to any other provision of the Forest Service regulations that would specifically disqualify the use of CE-6 for projects of this size.

2. As to Wild's second APA claim that the application of CE-6 to the projects at issue violates NEPA itself, we vacate the district court's ruling that this claim is time-barred. Wild asserts that if CE-6 covers the projects at issue, such an application would violate NEPA, since the Forest Service allegedly never made the required determination that the application of CE-6 to large-scale commercial logging operations would have no significant impact. The district court did not consider the merits of this claim, holding it was time-barred as a "procedural" challenge that accrued in 1992, when CE-6 was promulgated. In reaching this

conclusion, the district court relied on the rule of *Wind River Mining Corp. v. United States* that challenges to procedural violations in the adoption of a regulation or agency action must be brought within six years of the agency rulemaking. 946 F.2d 710, 715-716 (9th Cir. 1991). However, in light of the Supreme Court's recent decision in *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 144 S. Ct. 2440 (2024), *Wind River*'s rule has likely been abrogated. *Id.* at 2449. Accordingly, we remand Wild's second claim to the district court to apply *Corner Post* in the first instance to determine whether this claim is time-barred.[6]

3. The district court did not abuse its discretion in denying, in part, Wild's request for judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Evidence must be relevant to be admissible. Fed. R. Evid. 402. And we have repeatedly denied requests for judicial notice for lack of relevance. *E.g. Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 n.9 (9th Cir. 2020). Wild did not explain to the district court how the documents at issue— three decision memoranda approving different projects under different CEs—were relevant to its claims.[7]

---

[6] Relatedly, we decline to consider the merits of Wild's second claim in the first instance. *See Quinn v. Robinson*, 783 F.2d 776, 814 (9th Cir. 1986).
[7] Likewise, we deny Wild's request for judicial notice of the same documents, because they are not relevant to the resolution of this appeal. *See Sonner*, 971 F.3d at 845 n.9.

**AFFIRMED IN PART AND VACATED AND REMANDED IN PART.[8]**

---

[8] The parties shall bear their own costs on appeal.